THE PEOPLE, *ex rel.* Addison W. Durfee and others, superintendents of the poor of the county of Monroe, *vs.* THE COMMISSIONERS OF EMIGRATION.

All the power conferred upon the county superintendents of the poor, to support and maintain the county poor, must be exercised according to the provisions of the revised statutes, *at the county poor-house,* or at such other place as may be provided for that purpose, under the direction of the board of supervisors. They have no power to expend money for the *temporary* relief of the poor, or for their support elsewhere than at the poor-house, or place provided for their support, as a substitute therefor, under the direction of the supervisors.

If superintendents of the poor expend the money of the county for the temporary relief of the poor, elsewhere than at the poor-house, they cannot by mandamus compel the commissioners of emigration to reimburse them, or the county, for money thus unlawfully expended.

THE poor authorities of Monroe county afforded temporary relief to certain emigrants, and the commissioners of emigration considered, but refused to allow or pay, the charges for this relief. The superintendents of that county obtained an alternative writ of mandamus, with a view to a peremptory writ, to compel the allowance and payment of these charges. The commissioners made a return, denying their liability for temporary relief; to this return a demurrer was interposed by the relators, which was sustained by the special term. Judgment to that effect, and granting a peremptory writ, was entered. This is an appeal from such decision and judgment.

*John E. Develin*, for the appellants. I. A mandamus is not the proper remedy in this case. If the commissioners of emigration are liable to the relators at all, the relators have a specific remedy by action. The commissioners of emigration may by that name sue and be sued. (*Laws of* 1847, *ch.* 105, § 4.) If the commissioners be liable to the relators, they are liable by express statute, that is by law, and the relators are thus creditors of the commissioners. In this respect the commissioners do not differ from a corporation or individual under legal obligation to pay a creditor. The obligation in each case to pay is by law. A mandamus does not lie where a specific remedy by action exists. (*Ex parte The Firemen's Ins. Co.*, 6 *Hill*, 243. *The People* v. *Lawrence*, *Id.* 244. *Justice Cowen, in Ex parte Lynch*, 2 *id.* 45. *People* v. *Supervisors of Chenango*, 1 *Kern.* 563, *and cases cited by the court and counsel.*)

II. The commissioners of emigration, in allowing or rejecting the charges of counties, act as judicial officers. By § 5 of chapter 195 of Laws of 1847, the commissioners are directed to prescribe " such rules and regulations as they shall deem proper for the purpose of ascertaining *the right*, and the amount of the claim of any city, town or county to the indemnity under the provisions of this and the preceding section." This enactment confers upon the commissioners power to decide upon the right of the relators to the indemnity, and therefore makes the commissioners, *quoad hoc*, judicial officers. (*Vanderheyden* v. *Young*, 11 *John.* 150. *Wilson* v. *Mayor of New York*, 1 *Denio*, 595.) A mandamus will not be issued against judicial officers or officers vested with a discretion, to define what judgment or decision they shall give : it lies only to put them in motion. (*People* v. *Judges of Dutchess*, 20 *Wend.* 658.) In the present case, the commissioners have acted, but as the relators claim incorrectly ; a certiorari is therefore the remedy—on it, the court will inquire into the principles upon which the commissioners acted. (*Baldwin* v. *Calkins*, 10 *Wend.* 167.)

III. The commissioners of emigration are not liable to the counties for the "temporary relief" afforded emigrants. The legislature in all its poor laws has kept up a clear distinction between the "temporary relief" and the "support" of the poor. The words "relief" on the one hand and "maintain" and "support" on the other, are distinct in their etymological meaning. Relief, from *rem* and *levare*, is to lighten a burden, to assist one in bearing a thing. (*See Johnson's Dictionary, Webster's Dictionary, Richardson's Dictionary, words "relief," "maintain" and "support."*) "Support," on the other hand, is to take the burthen entirely off from the party bearing it. The etymological meaning of the word is also the popular one. To relieve a person, and to support a person, convey very different ideas, and "temporary relief" is still further from support. The commissioners are directed by § 4 of ch. 195, of the Laws of 1847, to provide for "the *maintenance* and *support*" of the emigrant, and to indemnify the counties for any expense or charge incurred by them "for the maintenance and support of the emigrant, *as far as may be.*"

IV. This construction has, up to the present time, been acquiesced in by all the counties; and this court will not try the rights of these parties on a mandamus, but should put the plaintiffs to their civil action, in which all questions can be properly determined.

*John N. Pomeroy*, also for appellants. The rights and duties of the relators depend upon the revised statutes, and not upon the act creating the defendants. The revised statutes prescribe the duties of the county superintendents of the poor, and declare what moneys expended by them shall be a county charge, and it is only such sums of money expended by them *as are a county charge*, that can be recovered from the defendants.

I. The case shows that the several sums of money paid by the relators were not so disbursed by them *as to be a county*

*charge*, and cannot therefore be recovered from the defendants. In this branch of the case I concede that "*temporary relief*" may be given to *transient paupers*, who have no settlement in the towns; and that such "temporary relief" may be made a county charge if *done in the proper way*, but it cannot be made a county charge by the county superintendents of the poor. The revised statutes (2 *R. S. 4th ed. p.* 12) define the powers and duties of county superintendents. Section 25 declares that "they shall have a general superintendence and care of the county poor who may be in their respective counties, and shall have power, and it shall be their duty" &c. and the section goes on to specify 11 subdivisions, all of which relate to the permanent relief in the poor-house. It is claimed by the counsel for the relators, that these general words confer the power on the county superintendents to grant "temporary relief" to "transient paupers;" and it is conceded that there is no other express or implied grant of power than this; so that the right of the relators to grant temporary relief, and make it a county charge, must be found here or nowhere. We say, 1. These words do not expressly or impliedly confer the right on the relators claimed by them. The "general superintendence and care of the poor" does not include the power to bestow money upon them at all, either *permanently* or *temporarily*. The power and duty to disburse moneys is given in the succeeding subdivisions. 2. This language is general, and it is explained, limited and applied in the 11 subdivisions following. These 11 subdivisions explain *how*, and *where*, and *when* the county superintendents are to have this "general care and superintendence of the poor." It is one of the most familiar rules of construction of statutes or writings, that when general terms are followed by several particulars, or several particulars are ended by a sweeping general term, the general language is to be construed as only applicable to things of the same kind as the particulars. This is too familiar a principle to need the citation of any authorities. When we see this statute, then, giving to the county superintendents "gen-

eral superintendence and care of the poor," and in the same sentence proceeding to specify their powers and duties in particular, this " general superintendence and care" must be taken to be of the same kind, and that only, as is included in the eleven particulars.　In other words, the relators only have power, under the statute, to take the " general superintendence and care" in the way and by the means provided in the eleven particulars.　Subsequent sections show how the legislature intended the poor should be " *temporarily relieved*," and how " *permanently maintained* and supported."　From a careful reading of the statute I think the following will be found to be the meaning and intent, viz:

II.　It is the manifest design of the statute that the county superintendents shall have the exclusive care of the permanent relief of county paupers, and that the town overseers of the poor shall have exclusive control of the disbursing the " *temporary relief*" to the county paupers, whether transient or resident.　(*See* 2 *R. S. 4th ed. p.* 12, § 25 ; *Id. p.* 18, §§ 52, 53, 54 ; *Id. p.* 19, § 55.)　These sections show that the legislature have kept clearly in view the distinction between *permanent* and *temporary* relief, and have designated two sets of officers to disburse it.　When a poor person is found within the limits of the county, whether he be transient or resident, and he needs *permanent relief*, or in other words " support and maintenance," he is sent to the county superintendents, and by them supported in the poor-house.　(2 *R. S. p.* 18, §§ 52, 53, 54.)　But when, on the other hand, a person is found who needs " *temporary relief*," no matter whether he be a transient pauper or not, he must apply to the overseers of the poor of the town in which he is, and they provide for him, and if he is a county pauper, and thus a charge on the county, which he would be if he was a transient person, like the individual relieved by the relators, the money paid out by the overseers is a county charge.　(*Id.* § 55 )　There is no escape from this interpretation of the statute ; indeed there is no room for interpretation.　The relative duties of the super-

intendents and overseers are too plain to be mistaken, and it is only because these officers have been guided by the "say so" of people, rather than by the express provisions of the statute, that any contrary custom has grown up. These last cited sections also show that the construction we put on § 25 is correct, and that no power is therein conferred on the superintendents to grant temporary relief.

In conclusion, it is submitted that the relators have not shown that they have made any such payment of money as becomes a county charge, so as to entitle them to be indemnified by the defendants.

*Wm. C. Rowley*, for the relators. I. The superintendents of the poor of the several counties are bodies corporate, and have a general care of *all* poor persons found within their respective counties, who have no particular settlement elsewhere. (2 *R. S. 4th ed. p.* 12, *sec.* 25.) The several persons aided by the superintendents of the poor of Monroe county in the month of December, 1856, named in the writ, were of this class, and further, they belonged to that class which, as immigrants, the commissioners of emigration were bound to support, or provide for. This is averred in the writ, and not denied in the return. The commissioners put their refusal to settle this account upon the sole ground that the superintendents had no power to grant relief except at the poorhouse. We claim that the superintendents are the judges when and how they shall grant relief, and that there is no appeal from their decision, and after they have expended the money of the county in aid of such persons as are chargeable upon the emigration fund, it is the duty of the commissioners to reimburse the county so far as they have money. (*Sess. L. of* 1847, *ch.* 195, §§ 4, 5.) That it is the duty of such commissioners to make provision for such cases, either by exacting a bond, or by commuting *per capita.* See Laws 1847, ch. 195, §§ 1, 2, and the same act as amended by the Laws of 1851, ch. 523, § 7. In case any of the persons above named, on

whose account a bond shall have been given, shall within five years become chargeable on any city, town or county, it is the duty of the commissioners to commence suit on the bond. (*Laws of* 1849, *ch.* 350, § 4.)

II. Mandamus lies to compel public officers to discharge the duties of their offices, in all cases where no other adequate remedy exists. (19 *John.* 259. 1 *Hill,* 50. 23 *Wend.* 453.)

III. A suit by the superintendents against the commissioners would not be the proper remedy, for the reasons, 1st. That some of the persons on whose account money had been paid, may not have paid the commutation fee, and it may be necessary for the commissioners in such case to collect money on the bond before paying. 2d. In case all had paid the commutation fee, yet the commissioners might not have enough money to pay the whole claim; in this case a judgment for the whole, (if indeed one could be obtained at all,) would be unjust towards them. 3d. If a judgment were obtained the commissioners, as such, have no property out of which to make it, and a proceeding similar to the present would have to be instituted to compel payment in whole or in part as they might have funds. The statute respecting the manner and amount of " temporary relief" to be afforded relates to overseers "of the poor" of the towns. (2 *R. S.* 4th ed. *p.* 18, §§ 52 *to* 55.) Support for a *day* or a *week* will answer the objection of the defendants, as well as support for a longer time.

*By the Court,* E. DARWIN SMITH, J. The duty of the defendants, so far as they have funds in hand, or available for that purpose, to provide for the maintenance and support of the persons named in the exhibit or schedule annexed to the writ of mandamus in this action, is not denied. The defendants say they have no funds in hand; all the moneys received by them under the various acts of the legislature as and for commutation money upon the bonds mentioned in chapter 195 of the laws of 1847, and other laws amendatory thereof, having been expended by them in indemnifying the various cities,

towns and counties of the state, under and pursuant to said chapter and laws, and in maintaining and supporting the persons or passengers mentioned and described in said chapter and laws. As these defendants are public officers, executing the duties of an important public trust, they obviously cannot be required to pay moneys for public purposes before such moneys come to their hands. If their answer is true, they cannot comply with the writ of mandamus issued in this action, for they have no funds wherewith to make payment. But aside from this present deficiency of funds to meet the claim of the relators, and assuming that from the bonds in their possession, or from other sources, they may receive funds from which such payment may hereafter be made, the defendants deny generally, their duty to make such payments, on the ground that the claims made by the relators were for *temporary relief* only, and that they were prohibited from paying or appropriating any money to the payment of such claims.

So far as relates to the duty of the defendants to indemnify the towns, cities and counties of the state for money expended for the support or maintenance of the emigrant passengers for whom commutation money shall have been paid, or on whose account bonds shall have been taken, I cannot perceive upon what ground they are entitled to inquire whether such emigrants received *temporary relief*, or *permanent support* or *maintenance*. I concur with the view of the judge at special term on this point. Section 5 of the act of 1847 declares that in case any of the persons for whom commutation money has been paid, or for whom a bond has been given, shall at any time within five years from the payment of such money or the execution of such bond, become chargeable upon any city, town or county within this state, it shall be the duty of the said commissioners to provide for the payment of any expense incurred by any such city, town or county, for the maintenance and support of any such person. This provision relates to all the modes in which the poor become chargeable upon the public, and to all the legal ways or processes by

which expense is incurred or paid by reason of a poor person becoming chargeable either to the towns, cities or counties of the state. The said commissioners, by section 4, are required "to appropriate the moneys which shall come to their hands under the provisions of said act, in such manner as to indemnify so far as may be the several cities, towns and counties of the state, for any *expense* or *charge* which may be incurred for the maintenance and support of the persons named in said act, to wit: the emigrant passengers. *Temporary relief* is necessarily included within this provision, for it is one of the modes or ways of supporting and maintaining the poor in towns, cities and counties, provided by law. The commissioners are bound to indemnify such towns, cities and counties against all expenses lawfully incurred and paid in support of such emigrants. They have doubtless the right to require that the money be expended in conformity with law. This brings us to a new point, not raised at special term, that the relators could not lawfully expend the money of the county for temporary relief. If this be so, the relators cannot require the defendants to reimburse them or the county for money thus unlawfully expended.

The demurrer admits that the claim of the relators is for money of the county of Monroe, expended by the relators in the character and capacity of superintendents of the poor of said county, for the *temporary relief* of the persons named in the schedule attached to such writ. The care of the poor in this state, so far as they are supported or relieved at the public expense, is confided to two classes of officers, called *overseers of the poor* and *superintendents of the poor*. The office of overseer of the poor was created by act of the legislature in 1788. They were town officers, elected by the towns, and had exclusive charge and oversight of the poor affairs of the state, so far as the poor were chargeable to the public, in their respective towns, until 1824. In 1824, by an act entitled "An act to provide for the establishment of county poor houses," (*Sess. Laws* 382, *ch.* 331,) the supervisors of the respective

counties of the state, in some counties were required, and in the others authorized, to purchase one or more tracts of land, not exceeding 200 acres, and thereon to build and erect, for the accommodation, employment and use of the county, one or more suitable buildings, to be denominated the poor-house of such county, and, to defray the expense of such purchase and buildings, to raise by tax the requisite moneys. And it was made the duty of such supervisors, in the said act, to choose annually, by plurality of votes, not less than five persons, who should be denominated superintendents of the poor of such county, who should take upon themselves and have the exclusive charge, management, direction and superintendence of said poor-house, and of every thing relating to the,same. The said superintendents were also authorized in said act to make rules for the regulation and government of said poor-house, to appoint a keeper thereof, and to contract for the support of the persons who should be placed in the poor-houses of the respective counties. In section 3 of said act, provision is made for peopling said poor-houses, by authorizing the overseers of the respective towns, in respect to any person in any city or town, who shall apply for relief, to make application to a justice of the peace of the county, which justice and the said overseer were required to inquire into the circumstances of such poor person, and if it appears to them that the said person is in indigent circumstances, so as to require relief, to issue a warrant to any constable, requiring him to remove such poor person to the poor-house of such county. Under this act, the superintendents of the poor had no charge, duty or authority in respect to the poor of their respective counties, except at the poor-house, and after they were at that place, duly committed or entrusted to their keeping. On the revision in 1827 the provisions of this act of 1824 were substantially re-enacted. The revisers, in preparing title 1 of chapter 2 of 1st part of revised statutes, combined the provisions of various laws providing for the support of the poor under three ways then in force in the state, in different counties :

one where the poor were all a county charge ; one where there were county poor houses where county and town poor were supported ; and the other where the towns supported their own poor. They endeavored to consolidate these laws into one system. They proposed a system making all the poor a county charge, but it was not adopted by the legislature. The present system requires the appointment of county superintendents in all counties, and the erection of county poorhouses, (except New York.) Section 16 declares that the superintendents shall be a corporation, and shall possess the usual powers of corporations for public purposes, and shall have a general superintendence and care of the county poor who shall be in their respective counties, and shall have the powers specified in eleven subdivisions following. These subdivisions embrace the same powers conferred upon the county superintendent by the act of 1824, with some additions and amplifications. The duties prescribed in these subdivisions all relate to the support of the poor at the *county poor house,* and for the determination and settlement of the claims of the towns in respect to the poor, giving the superintendents a general supervisory jurisdiction over all questions relating to the settlement of the poor and of the respective liabilities of the towns and county. The powers conferred upon the superintendents in this section, as a corporation, are such as are incidental to all public officers where several persons must act together. They merely constitute them a corporation, with the usual powers to assemble, to have succession notwithstanding a change of officers, to sue and be sued, and use the corporate name, and act as a public body, possessing in this instance a general supervision and care over the county poor. The special enumeration of the powers conferred upon the superintendents, constitute the charter of the corporation, and embrace all their powers, except such as are incidental to all corporations or public bodies. All corporations or public officers, or other persons exercising a special authority, must keep within the limits prescribed for them by law, (15 *N. Y. Rep.*

The People *v.* The Commissioners of Emigration.

1 *Smith,* 1,) and must show their power of attorney in the statute book. All the power conferred upon the county superintendents, to support and maintain the county poor, must be exercised according to these provisions, *at the county poor-house,* or at such other place as may be provided for that purpose by the direction of the board of supervisors.

In none of the subdivisions of said section, and in none of the enumerations of the powers of the superintendents, or in any distinct section, is any power given to the superintendents, or any of them, to expend money for the *temporary relief* of the poor, or to spend any money for their support elsewhere than at the poor-house, or place provided for their support as a substitute therefor, under the direction of the supervisors. The poor-houses are to be supplied with inmates by persons sent to them by order of the overseers of the poor, precisely as under the third section of the act of 1824, except that the overseer of the poor need not associate with him a justice of the peace in making such order, as prescribed in said last mentioned act, but so far as relates to temporary relief, the intervention and order of a justice of the peace is still required, (sec. 42,) and that this power of giving temporary relief is only given to the overseers of the poor, is obvious from the provision in the same section, that not more than $10 can be expended or paid for the relief of any one poor person or family, without the sanction in writing of one of the superintendents of the poor, to be presented to the county treasurer, with the order of the justice; thus making the superintendents of the poor also a check upon the overseer, together with the justices of the peace. No other provision for *temporary relief* is made, except that contained in this section, 42. No officer is authorized to make such expenditure but the overseers of the poor. This section has since been amended by chapter 236 of laws of 1854, so as to allow the overseer to expend a sum not to exceed $10, in his discretion, for the temporary relief of one poor person, without the order of the justice. The system for the support of the poor, pre-

scribed in this title of the revised statutes, gives to the superintendents supervisory powers like those of directors of a corporation aggregate over the poor-house and poor affairs of the county, and gives to overseers of the poor power to send paupers to the poor-house and give them temporary relief, and constitutes them the *only* officers who are to come in the first instance in personal contact with the individual poor ; the only officers to inquire into their circumstances and to make primary provision for their support.

The moneys of the public for the support of the poor are all placed in the keeping of the county treasurer, who may pay, and is only authorized to pay, the superintendent the sums required to support the poor-house, and to the overseer the sums requisite for temporary relief.

The poor system as devised by the legislature is one of checks and guards, carefully provided to protect the public interests in respect to the disbursement of the public money designed for the support of the poor.  Around the superintendents of the poor as disbursing officers to the individual poor, there are no checks or guards, and for the obvious reason that they are entrusted with no money for such purpose. Their resolution to appropriate money for some specific object, their draft upon the treasurer for such money, and their voucher therefor from the person to whom the same is paid, may explain all their moneyed transactions for the public. They have clearly no authority to draw, use or expend the public money otherwise than is prescribed or allowed to them expressly by law for the support of the poor at the poor-house.

The moneys expended by the relators, for the temporary relief of the persons named in the schedule annexed to the writ in this cause, having thus been expended without any authority of law, the defendants are entitled to judgment upon the demurrer, and the writ of peremptory mandamus must be denied, and the order of the special term should be reversed.

[CAYUGA GENERAL TERM, June 7, 1858.  *Johnson, Welles* and *Smith,* Justices.]