WEAVER, Superintendent of Poor, *v.* BENJAMIN *et al.*

*(Supreme Court, General Term, Fifth Department.* March, 1892.)

PROCEEDINGS UNDER POOR LAWS—POWERS OF COURT OF SESSIONS.

Code Crim. Proc. § 915 et seq., makes it the duty of persons having sufficient means to maintain their relatives within prescribed degrees, who are unable to maintain themselves; and provides that, if such relatives of a poor person fail in such duty, the overseer of the poor of the town where such poor person is, or the superintendent of the poor in certain counties, may apply to the court of sessions of the county where the relatives dwell, on a notice prescribed, for an order to compel such relief; that after acquiring jurisdiction of such relatives, and having heard the allegations and proofs, the court may make an order directing the relatives to furnish such maintenance, specifying the sum to be paid for a certain period, or until the further order of the court; and the court may, from time to time, vary such order, as the circumstances may require. *Held,* that the court of sessions had no power to prescribe the place where such poor person shall be supported, nor the conditions of such support, except that it shall be by the approval of the superintendent of the poor.

Appeal from court of sessions, Allegany county.

Proceedings by William Weaver, superintendent of the poor, to require Hiram Benjamin and others to support and maintain Jemima Benjamin, a poor person. From an order denying a motion to modify an order previously made, the petitioner appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*D. Dixon,* for appellant. *C. D. Farnham,* for respondents.

DWIGHT, P. J. The proceeding was instituted under the provisions of title 8, pt. 6, Code Crim. Proc. § 914 et seq., to compel the children—two sons and a daughter—of Jemima Benjamin to support their mother. Only the son Hiram Benjamin appeared to answer the application, and upon his consent, in open court, an order was made that he pay to the superintendent of the poor the sum of two dollars per week for the support of his mother, so long as she should remain in the county poorhouse, or until the further order of the court. The order recited, among other things, that the distinction between town and county poor had been abolished in Allegany county, and that the expense of maintaining all the poor of the county was a county charge, and that the county had provided and then had a poorhouse or alms-house for the reception of its poor. A few months later—Mrs. Benjamin, in the mean time, not having been removed to the poorhouse—the superintendent made a further application to the court, stating that he "had found such order impracticable, and unfit to meet the needs, comfort, and contentment of said Jemima Benjamin," and asking that the order might be set aside or modified, "so far as it limits the place of support to be at the alms or county house." The court entertained the application, and, after hearing counsel, held and decided "that the court has no power to direct the payment of money for the support of said Jemima Benjamin at any other place than

the county almshouse," and upon this ground alone denied the application to set aside or modify the order already made.

In this determination it seems to us very clear that the learned court of sessions fell into the error of limiting its own powers, in a proceeding of this character, by the law which prescribes the powers and duties of the superintendent or overseer of the poor, in respect to the support of paupers or persons who have become a charge upon the county or the town in which they may be. It is to cases of the latter character that the provisions of the Revised Statutes relate, which require the removal to the county poorhouse of all persons requiring permanent relief or support, and who can be safely so removed. 1 Rev. St. p. 624, § 39, (Birdseye, p. 2261, § 28;) *People* v. *Commissioners of Emigration*, 27 Barb. 562; *Cuyler* v. *Decker*, 20 Hun, 172. But it is manifest on the face of the statute under which this proceeding is taken that those provisions have no application here. This statute (title 8, pt. 6, Code Crim. Proc.) provides a particular scheme for the support and maintenance of a particular class of persons unable to maintain themselves, viz., of persons who have relatives within prescribed degrees, who are of sufficient ability to relieve and maintain them. The first section of the title (section 914) provides as follows: "The father, mother, and children, of sufficient ability, of a poor person who is insane, blind, old, lame, impotent, or decrepit, so as to be unable to work to maintain himself, must, at their own charge, relieve and maintain him in a manner to be approved by the overseers of the town where he is." The next section (915) provides that "if a relative of a poor person fail to relieve and maintain him, as provided in the last section, the overseer of the poor of the town where he is  *  *  *  may apply to the court of sessions of the county where the relative dwells [upon a notice prescribed] for an order to compel such relief." Section 926 gives to the superintendents of the poor of those counties in which all the poor are a county charge the powers given to the overseers of the towns by the previous sections quoted. Other sections of the title prescribe the duty of the court of sessions upon such application being made to it. Thus section 916 provides that the court, after hearing the allegations and proofs of the parties, "must order such of the relatives of the poor person mentioned in section 914 as were served with the notice, and are of sufficient ability, to relieve and maintain him, specifying in the order the sum to be paid weekly for his support;" and section 918 provides that "the order may specify the time during which the relatives must maintain the poor person, or during which any of the sums directed by the court must be paid, or it may be indefinite, or until the further order of the court. The court may, from time to time, vary the order, as circumstances may require, on the application either of any relative affected by it, or of an officer on whose application the order was made."

This, then, is the particular scheme of the statute for the relief and maintenance of a particular class of poor persons, viz., who have relatives within prescribed degrees of sufficient ability to relieve and maintain them. It begins by laying upon those relatives the absolute duty, at their own charge, to support the persons described, not in the poorhouse, nor even through the agency of the poor authorities of town or county, but only in a manner to be approved by them; and the further provisions of the statute relate to the means by which this duty shall be enforced. It is manifest that this particular scheme is outside of the general provisions of the statute for the care and relief of the poor who are, or who become, a public charge. Its evident purpose is to prevent these persons from becoming a public charge, and, as it seems to us, nothing is further from its intent than that they should be made and marked as public paupers by being consigned to the poorhouse of the county. But however this may be, and whatever might become the duty or discretion, in this respect, of the superintendent of the poor, in case the relative required by the order to relieve and maintain the poor person refused

to do so, but in default thereof paid the weekly sum specified in the order, it is plain that the court of sessions had no power to prescribe the place where the poor person should be supported, nor any of the conditions of such support, except that the manner of it should be such as was approved by the superintendent of the poor. This is apparent from the reading of the statute quoted, (supra;) and so the court said in *Duel* v. *Lamb*, 1 Thomp. & C. 66–69; and added: "Whatever power there is over that support is vested in the overseers or superintendents of the poor; the sessions can only declare the duty to support, and, in default, to fix the sum to be paid." It is very clear that the order which was sought to be set aside or modified went beyond the power of the court of sessions when it attached, to the liability of the respondent to support his mother, the condition that she should receive such support in the county poorhouse. That order, having been made on consent, probably cannot be modified without consent, but it can be set aside, and the proper order made, in accordance with the proofs to be taken. The order appealed from should be reversed, and the proceeding remitted to the court of sessions of Allegany county, with directions to proceed therein. So ordered, with costs to be paid by the respondents. All concur.